UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

| | |
|---|---|
| IN RE | |
| KRISTEN FRANCIS MILES | CASE NO. 23-10082 |
| DEBTOR | CHAPTER 7 |
| FIRST NATIONAL BANK OF OMAHA | PLAINTIFF |
| V. | ADV. NO. 23-01004 |
| KRISTEN FRANCIS MILES | DEFENDANT |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction.**

Plaintiff First National Bank of Omaha's Amended Complaint [ECF No. 5] alleges Debtor/Defendant Kristen Miles charged items on a credit card issued to him by Plaintiff (the "Credit Card") totaling $2,036.40 that he did not intend to repay. Thus, according to Plaintiff, this debt should be excepted from Debtor's discharge under § 523(a)(2)(A).[1]

Debtor's Amended Answer [ECF No. 11] denies Plaintiff's allegations, including that he intended to defraud Plaintiff. He requests the Court find against Plaintiff and award him his costs and attorney's fees for defending the action under § 523(d).

At the close of discovery, Debtor moved for summary judgment [ECF No. 13], supported by his affidavit [ECF No. 13-2]. Plaintiff responded to Debtor's motion and, in addition, moved for leave to file an untimely cross-motion for summary judgment and to reschedule the trial [ECF No. 18]. The Court denied both parties' motions [ECF No. 28].

---

[1] Unless otherwise indicated, references to all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Rule ____."

The Court held a trial on January 10, 2024, at which it heard testimony from two witnesses and observed their demeanor. The Court also has considered the documentary evidence introduced at trial and the parties' joint stipulations of fact [ECF No. 27]. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052.

## II.     Findings of Fact.

Plaintiff granted Debtor the use of the Credit Card on August 20, 2015. Around September 2020, the balance peaked at approximately $3,000. Debtor spent the next two years rarely using the Credit Card and, instead, diligently paid the balance down to $1,421.37 by November 2, 2022.

Knowing he had credit available, and lacking sufficient cash, Debtor used the Credit Card on November 2 to pay $1,017.49 to repair his vehicle's brakes. Over the next eleven days, Debtor charged $1,018.91 more for other expenses, including household supplies, gas, fast food, two videos, and a $316.81 veterinary bill. These charges, totaling $2,036.40 (the "November Charges"), increased the Credit Card balance to $3,457.77—just over his $3,400 limit.

While Debtor had experienced health issues in mid-2022 related to his kidneys, causing him to miss work intermittently, he believed his health issues were largely resolved by November 2022, thereby allowing him to earn sufficient income at his job to pay his expenses. Debtor credibly testified that, when he incurred the November Charges, he intended to pay the resulting debt using his anticipated tax refund. However, in late November 2022, Debtor suffered additional health issues that prevented him from working from December 2022 to March 2023. Consequently, his income decreased from about $1,000 per week in wages to $461.75 per week in short-term disability payments.

Debtor had filed a chapter 7 bankruptcy case in 2009, and knew from that experience that certain unsecured debt, including credit card debt, could be discharged in bankruptcy. Despite this knowledge, and despite the reduction in his income, Debtor made several payments from November 2022 until the petition date on unsecured credit card debt he owed to other issuers—but sent no payments to Plaintiff. Debtor testified he made payments to other creditors, and not Plaintiff, because the other accounts had smaller principal balances and it was his intent to pay off the smaller debts before moving on to the larger one he owed to Plaintiff. In the meantime, Debtor did not answer any collection calls Plaintiff's representatives made to him, nor did he seek any hardship considerations from Plaintiff.

After returning to his job in March 2023, Debtor continued to have health issues resulting in more days of missed work. He feared he would never get "caught up" on his debts and, thus, began to consider seeking bankruptcy relief. He first spoke with a bankruptcy attorney in April and filed his chapter 7 case on May 12, 2023, scheduling Plaintiff as an unsecured creditor.

Plaintiff did not attend Debtor's meeting of creditors, nor did it seek a Rule 2004 examination before filing this adversary proceeding. Rather, Plaintiff relied on Debtor's knowledge from his prior bankruptcy, his scheduled monthly disposable income, and Plaintiff's records of Debtor's use of the Credit Card, to support its allegation that Debtor intended to defraud Plaintiff by incurring the November Charges without intending to repay them. After filing the adversary proceeding, Plaintiff did not serve discovery demands or take Debtor's deposition. In fact, Plaintiff learned of Debtor's health challenges from the affidavit he filed to support his motion for summary judgment.

**III.    Jurisdiction.**

This Court has jurisdiction over this proceeding. 28 U.S.C. § 1334(a). Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (C), and (I).

**IV.    Plaintiff failed to carry its burden of showing the debt is nondischargeable under § 523(a)(2)(A).**

A debt is excepted from discharge under § 523(a)(2)(A) when it is obtained by "false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). To prove a debt is nondischargeable under this provision, a plaintiff has the burden to establish each of the following elements by a preponderance of evidence:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
> (2) the debtor intended to deceive the creditor;
> (3) the creditor justifiably relied on the false representation; and
> (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998); *Feldman v. Pearl (In re Pearl)*, 577 B.R. 513, 527 (Bankr. E.D. Ky. 2017). Failing to establish even one element prevents a court from holding in a plaintiff's favor. Further, courts construe exceptions to discharge narrowly in the debtor's favor. *In re Zwosta*, 395 B.R. 378, 382-83 (B.A.P. 6th Cir. 2008). As the parties focused at trial on Debtor's intent in incurring the debt owed to Plaintiff, the Court will do the same.

The intent element under § 523(a)(2)(A) turns on whether "the debtor subjectively intended to repay the debt." *Rembert*, 141 F.3d at 281. This subjective analysis makes it extremely difficult for a plaintiff to establish fraudulent intent. *Id.* at 282. Because "debtors have an incentive to make self-serving statements and will rarely admit an intent not to repay[,]"

4

courts determine intent based on the totality of the circumstances. *Id.* Courts look to several nonexclusive factors including:

> (1) the length of time between the charges made and the filing of bankruptcy;
> (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
> (3) the number of charges made;
> (4) the amount of the charges;
> (5) the financial condition of the debtor at the time the charges are made;
> (6) whether the charges were above the credit limit of the account;
> (7) whether the debtor made multiple charges on the same day;
> (8) whether or not the debtor was employed;
> (9) the debtor's prospects for employment;
> (10) financial sophistication of the debtor;
> (11) whether there was a sudden change in the debtor's buying habits; and
> (12) whether the purchases were made for luxuries or necessities.

*Id.*

To prove Debtor did not intend to repay the November Charges, Plaintiff focused on some of these factors. At trial, Plaintiff established Debtor changed his buying habits on the Credit Card when he made multiple charges (some on the same day) during a short period in November 2022. Specifically, after not using the Credit Card for about two years, Debtor charged approximately $2,000 on the Credit Card, via nineteen separate transactions, between November 2-13. Plaintiff also elicited testimony that Debtor knew unsecured credit card debt could be discharged in bankruptcy due to his 2009 bankruptcy case. Plaintiff contends this evidence establishes Debtor incurred the November Charges with no intent to repay them.

While these facts are relevant, Plaintiff fails to account for Debtor's explanations. The Court found Debtor to be a credible, forthcoming, and earnest witness. In unrebutted testimony, he explained he paid down the balance on the Credit Card from about $3,000 in September 2020 to $1,421.37 in November 2022, creating available credit. When Debtor faced the unexpected expense of replacing his vehicle's brakes, he lacked the cash to pay for the repair. So, he used the Credit Card. He continued using the available credit on the Credit Card for food and house

5

Case 23-01004-tnw    Doc 33    Filed 01/24/24    Entered 01/24/24 12:03:46    Desc Main
Document      Page 6 of 9

supplies, ranging from $4.44 to $170.49, and for an unanticipated veterinarian visit, all of which ultimately exhausted any remaining credit available. This testimony is undisputed. Plaintiff adduced no evidence that any of the November Charges were for luxury goods, nor did Plaintiff otherwise challenge Debtor's depiction of his purchases.

Debtor also testified he had a plan to repay the November Charges when they were incurred through use of his anticipated tax refund and wages from his employment. But his health problems significantly reduced his income from December 2022 through March 2023, thwarting his plan. Plaintiff did not prove Debtor knew when he made the November Charges he soon would miss work for three months and, as a result, fall behind on his financial obligations.

In addition, the Court is not persuaded by Plaintiff's theory that Debtor understood the benefits of a discharge based on his 2009 bankruptcy case and incurred the November Charges intending to discharge them through a new bankruptcy filing. While Debtor did not pay Plaintiff, he did pay other unsecured creditors in the months before filing his May 2023 petition. It is implausible that Debtor paid other credit card debt in the period leading up to his petition date but did not pay Plaintiff because he intended to discharge that particular debt in bankruptcy. Debtor credibly testified he first considered seeking bankruptcy relief only after he returned to work in March 2023 and felt he could not get "caught up" due to ongoing health problems.

Debtor's account of these events was not challenged, and his explanations persuasively refute Plaintiff's contention of fraudulent conduct. Considering the totality of the circumstances and the relevant factors, Plaintiff failed to meet its burden to prove Debtor's intent to deceive Plaintiff, an essential element of its claim under § 523(a)(2)(A).

V.   **Debtor is entitled to attorney's fees and costs pursuant to § 523(d).**

Debtor asks the Court to award him his costs and attorney's fees for defending this action.  Section 523(d) provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).  Congress enacted this provision "to discourage creditors from commencing exception to discharge actions in the hopes of obtaining a settlement from an honest consumer debtor anxious to save attorney's fees because such practices impair the debtor's fresh start." *Firstbanks v. Goss (In re Goss)*, 149 B.R. 460, 462 (Bankr. E.D. Mich. 1992).

Here, Plaintiff brought a nondischargeability action under § 523(a)(2)(A), the November Charges are consumer debts, and the Court has found those debts dischargeable.  Therefore, "the burden then shifts to [Plaintiff] to prove either that its position was substantially justified or that special circumstances exist that would make an award of costs and attorney fees unjust." *Swartz v. Strausbaugh (In re Strausbaugh)*, 376 B.R. 631, 636 (Bankr. S.D. Ohio 2007) (citations and quotation marks omitted).  This Court has explained:

> [t]o be substantially justified a creditor's position must be reasonable in both law and fact. This has been expressed as a three-part test: (1) a reasonable basis in law for the theory propounded; (2) a reasonable basis in truth for the facts alleged; and (3) a reasonable connection between the facts alleged and the legal theory advanced.  Further, a determination of substantial justification should turn on a totality of the circumstances. vThis analysis permits a trial court to examine a number of factors, including, but not limited to, whether the creditor attended the 341 meeting or conducted an examination under Rule 2004, as well as the extent of its pre-trial investigation.

*Bank of America v. Miller (In re Miller)*, 250 B.R. 294, 296 (Bankr. E.D. Ky. 2000) (citations omitted).  Applying this test, Debtor is entitled to recover his costs of defense from Plaintiff.

7

First, this Court previously explained "[a]llegations that focus on charges incurred or payments not made are not sufficient in and of themselves" to support a nondischargeability action under § 523(a)(2)(A). *Id.* Such allegations essentially are all Plaintiff focused on here. Plaintiff based its case on an accounting of Debtor's charges on the Credit Card over eleven days in November 2022 and his subsequent payments to creditors other than Plaintiff. Creditors are "well advised to consider whether they can offer [other] facts which can support a finding of fraud pursuant to the standards set out in . . . *Rembert*[.]" *Id.* Moreover, the notion that a debtor's failure to answer a creditor's collection calls or pursue its (unpublished) hardship programs somehow bears on a debtor's fraudulent intent at the time charges are incurred is, at best, without merit and, at worst, frivolous.

Second, as in *Miller*, the Complaint's allegations derived from information in Debtor's petition and Plaintiff's own records. Plaintiff made no attempt to procure information through a Rule 2004 examination or by attending the § 341 meeting. "While the failure to attend the [§] 341 meeting or schedule a Rule 2004 examination is not 'dispositive' it is 'probative.'" *Id.* at 297 (citation omitted). Had Plaintiff done so before filing this action, it would have obtained the material facts contained in Debtor's two-page affidavit (which detailed Debtor's health issues and the unanticipated vehicle and veterinary expenses comprising about two-thirds of the November Charges). Performing a minimal investigation prior to filing suit may have caused Plaintiff to make a better decision. Instead, it litigated through trial the non-dischargeability of a $2,000 credit card debt without evidence of luxury purchases and after receiving uncontested evidence about Debtor's unexpected expenses and significant health issues resulting in three months of sharply reduced income.

8

Lastly, once a creditor knows it cannot "controvert the facts set out in [a debtor's] supporting affidavit, it [is] not substantially justified in going on." *Id.* Here, during closing argument, Plaintiff's counsel stated it offered to dismiss the action after reviewing Debtor's affidavit but did not do so because Debtor insisted Plaintiff pay his legal fees and costs. Notwithstanding Debtor's position, Plaintiff proceeded to increase costs further by litigating Debtor's motion for summary judgment, moving for leave to file its own belated dispositive motion, and trying this case. Plaintiff both failed to conduct a proper and required pre-filing investigation and compounded its errors through its post-filing litigation conduct.

Plaintiff has failed to meet its burden to show its position was substantially justified or special circumstances exist making it unjust to award Debtor his costs and attorney's fees. Considering the totality of circumstances, Debtor will be awarded his reasonable attorney's fees and costs under § 523(d).

**VI.    Conclusion.**

For these reasons, the Court finds the debt stemming from the November Charges shall not be excepted from Debtor's discharge. Debtor is entitled to recover his reasonable attorney's fees and costs from Plaintiff pursuant to § 523(d).

IT IS ORDERED:

1. Debtor shall supplement the record with an affidavit setting forth his reasonable attorney's fees and costs within 14 days of the date hereof.

2. Plaintiff may object to the amount of the fees and costs in Debtor's affidavit within 14 days of its filing. If no objection is timely filed, the Court may enter a final judgment without further notice or hearing.

9

_____
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, January 24, 2024**
**(tnw)**